UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYVAN NASSIRI MOTLAGH,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>QATAR AIRWAYS, Q.C.S.C, a foreign business corporation d/b/a QATAR AIRWAYS; and DOES 1-25, inclusive,<br><br>　　　　　　　　　Defendants. | Case No.: 3:18-cv-2829-BTM-AHG<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**[ECF NO. 4]** |

　　　Before the Court is Defendant Qatar Airways, Q.C.S.C.'s ("Defendant") motion to dismiss for lack of subject matter jurisdiction based on matters collateral to the merits of this case. (ECF No. 4.) "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted). "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citations omitted). "No presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude

1

the trial court from evaluating for itself the merits of jurisdictional claims."[1] *Id.* (quotations, citations, and alterations omitted)). As always, the burden rests upon the party asserting subject matter jurisdiction to demonstrate its existence. *Id.; see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the Federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)).

In her complaint, Plaintiff alleges she suffered injury when she was struck by a runaway food and beverage cart aboard a flight operated by Defendant traveling from Tehran, Iran to Los Angeles, California, United States via Doha, Qatar on January 1, 2017. (ECF No. 1, §§ 7-8.) Plaintiff asserts that this January 1, 2017 flight was the inbound leg of roundtrip air travel from/to Los Angeles (with intervening stops in Doha and Tehran) and that she purchased her ticket while living in Oceanside, California from a travel agent located in Tehran. She argues that this Court has subject matter jurisdiction over this personal injury action under 28 U.S.C. § 1331 based upon the Montreal Convention,[2] which provides that a passenger injured on an international flight may bring an action for damages: (1) where the carrier has its "domicile"; (2) where the carrier has its "principal place of business"; (3) "where [the carrier] has a place of business through which the contract has been made"; (4) "at the place of destination"; or (5) "in the territory of

---

[1] "[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citations omitted).

[2] *i.e.*, Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 1999 WL 33292734 (the "Montreal Convention").

a State Party in which at the time of the accident the passenger has his or her principal and permanent residence" (so long as the carrier operates services to/from – and conducts business from leased or owned premises in – such territory). Montreal Convention, art. 33(1)–(3).[3] Plaintiff argues that this Court qualifies under the third, fourth, and fifth of the preceding categories with regard to this action.[4]

Defendant, however, asserts that Plaintiff's January 1, 2017 flight was actually the outbound leg of roundtrip air travel from/to Tehran (with intervening

---

[3] "(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination. (2) In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement. (3) For the purposes of paragraph 2, (a) 'commercial agreement' means an agreement, other than an agency agreement, made between carriers and relating to the provision of their joint services for carriage of passengers by air; (b) 'principal and permanent residence' means the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard." Montreal Convention, art. 33(1)–(3).

[4] Plaintiff does not argue that this Court qualifies under the carrier's principal place of business or domicile/residence) categories of either the Montreal Convention or the Warsaw Convention. (*See* ECF No. 5, at 4-6; *see also* ECF No. 1, ¶ 2 (Defendant "is a foreign business corporation organized under the laws of Doha, Qatar."); ECF No. 4-3, at 3 ("[Defendant] is a corporation duly organized and existing under the laws of Qatar and maintains its principal place of business and headquarters in Doha, Qatar.").)

stops in Doha and Los Angeles). Further, Defendant asserts that Iran is not a party to the Montreal Convention.[5] Based thereon, Defendant argues that "the place of departure and the place of destination" for Plaintiff's relevant roundtrip travel were not situated within the territory of a party to the Montreal Convention and therefore this action is governed by the Montreal Convention's predecessor, the Warsaw Convention (as amended by the Hague Protocol).[6] *See* Montreal Convention, art. 1(2);[7] *see also Alemi v. Qatar Airways*, 842 F. Supp. 2d 847, 850 n.2 (D. Md. 2012)

---

[5] (ECF No.4-4, at 15-23; *see also* ECF No. 4-2, at 3.) Plaintiff does not contest Defendant's assertion that Iran is not a party to the Montreal Convention.

[6] *i.e.*, Convention for the Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105 (the "Warsaw Convention"), as amended by the Protocol to Amend the Convention for Unification of Certain Rules Relating to International Carriage by Air, S. Treaty Doc. No. 107–14, 1955 WL 45606 (the "Hague Protocol"). The United States, Iran, and Qatar are all parties to the Warsaw Convention as amended by the Hague Protocol. (*See* ECF No. 4-4, at 3-13; *see also* ECF No. 4-2, at 2-3.).)

[7] "For the purposes of this Convention, the expression international carriage means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." Montreal Convention, art. 1(2); *see also id.* at art. 1(1) ("This Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."); Warsaw Convention, art. 1(2) ("For the purposes of this Convention, the expression international carriage means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two High Contracting Parties or within the territory of a single High Contracting Party if there is an agreed stopping place within the territory of another State, even if that State is not a High Contracting Party."), *as amended by* Hague Protocol, art. 1(1). (*See also* ECF No. 5, at 3 ("[T]he Montreal Convention applies to the following types of flights: (1) one-

(concluding Montreal Convention inapplicable to roundtrip travel from/to Iran because Iran is not a signatory thereto); *Sajajed v. Emirates Airlines*, 2017 WL 1150403, at *4 (N.D. Cal. Mar. 28, 2017) (same). Notably, the Warsaw Convention provides that a passenger injured on an international flight may only bring an action for damages: (1) "where the carrier is ordinarily a resident"; (2) "where the carrier . . . has his principal place of business"; (3) "where the carrier . . . has an establishment by which the contract has been made"; or (4) "at the place of destination." Warsaw Convention, art. 28(1);[8] *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 986 (9th Cir. 2004) ("[U]nless one of these enumerated places is within the United States, no American court can take cognizance of a suit predicated on the Warsaw Convention." (citations omitted)). Defendant argues that this Court does not satisfy any of the foregoing categories and therefore lacks subject matter jurisdiction over this action. *See* Warsaw Convention, art. 17, 24;[9] *El Al Israel*

---

way international flights when both countries (departure and destination) have ratified the Convention, and (2) roundtrip international travel that begins and ends in a country that has ratified the Convention.").)

[8] "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the Court having jurisdiction where the carrier is ordinarily resident, or has his principal place of business, or has an establishment by which the contract has been made or before the Court having jurisdiction at the place of destination." Warsaw Convention, art. 28(1).

[9] Warsaw Convention, art. 17 ("The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."); *id.* at art. 24 ("(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention. (2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring

*Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 175 (1999) ("[R]ecovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking [international air travel], if not allowed under the [Warsaw] Convention, is not available at all. . . . The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." (internal quotations, citations, and alterations omitted)).

Thus, the Court must determine the "place of departure" and "place of destination" for Plaintiff's roundtrip air travel of which the subject January 1, 2017 flight was a part. The parties agree that "[w]hen a passenger purchases a round trip ticket, the destination is the place where the trip began." (ECF No. 5, at 5 (citing *Polanski v. KLM Royal Dutch Airlines*, 378 F. Supp. 2d 1222 (S.D. Cal. 2005)).) *See also Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 991 (9th Cir. 2004) ("[T]here can only be one 'destination' for Warsaw Convention purposes for each passenger and . . . intermediate stops on trips are to be construed as 'agreed stopping places' that do not disturb that final destination." (citing *In re Alleged Food Poisoning Incident, Mar., 1984*, 770 F.2d 3, 6-7 (2d Cir. 1985)); *Swaminathan v. Swiss Air Transp. Co.*, 962 F.2d 387, 389 (5th Cir. 1992) ("When a person purchases a roundtrip ticket, there can be but one destination, where the trip originated. This is true even when the flight number, time, and date on a return trip are left open." (citations omitted)). "[T]he intention of the parties as expressed in the contract of transportation, *i.e.*, the ticket or other instrument, determines the

---

suit and what are their respective rights."); *see also* Montreal Convention, art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.").

final destination. Such contracts should be interpreted according to the objective, rather than the subjective, intent of the parties." *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir. 1995); *Klos v. Lotnicze*, 133 F.3d 164, 167 (2nd Cir. 1997) ("[T]he place of final destination for purposes of jurisdiction under the Warsaw Convention is the return city appearing on a round-trip ticket."). *See, e.g.*, *Swaminathan*, 962 F.2d at 388-89 (where passenger "purchased a roundtrip ticket . . . which routed him from Dakar, Senegal to Geneva to New York to Geneva and back to Dakar[,]" . . . New York City [was] merely an intermediate stopping point . . . [and] Dakar, Senegal [was] the final destination"); *In re Alleged Food Poisoning Incident*, 770 F.2d at 6 (where passenger "purchased one ticket, in two booklets, for a round-trip journey" that "listed Riyadh as both the origin and destination of the voyage[,] . . . the ultimate destination of th[e] journey was Riyadh, and not any point within the United States. The stops in the United States were no more than 'agreed stopping places.'" (quoting Warsaw Convention, art. 1(2)) (citations omitted)); *Lee v. China Airlines Ltd.*, 669 F. Supp. 979, 980 (C.D. Cal. 1987) (where "[t]he ticket . . . provided for transportation from Hong Kong to Taipei to San Francisco to Hong Kong. . . . the departure point and the destination . . . must officially be considered Hong Kong"); *Sajajed v. Emirates Airlines*, 2017 WL 1150403, at *3 (N.D. Cal. Mar. 28, 2017) (where ticket "provided roundtrip transportation from and to Tehran, Iran, with intermediate stops in Dubai and San Francisco[,] . . . [the] destination under Article 28 of the Warsaw Convention was Iran." (citations omitted)). "This focus on the tickets for passenger air transportation does not, of course, necessarily mean that a court may not call upon extrinsic evidence in order to make sense of the objective indicia presented by those tickets—for instance, in deciphering an industry code affixed to a particular flight coupon (by referring to trade usage); translating a foreign phrase or expression (by referring to a dictionary); or observing that the record numbers revealed on a particular flight coupon do not correspond to those on its asserted

companions (by, of course, referring to those asserted companions)." *Coyle* 363 F.3d at 988–89 (citations omitted). Indeed, "certain objective extrinsic evidence may connect flights together as, or rule out the possibility that certain flights were, part of an undivided transportation even when the flight coupons do not themselves evince such a connection (or its absence)." *Id.*

While Plaintiff's complaint is light on relevant details, she attests that her roundtrip travel began with outbound air travel from Los Angeles to Tehran on December 6, 2016 and ended with inbound air travel from Tehran to Los Angeles on January 1, 2017. (ECF No. 6, at 2.) She further attests she "booked [the] round-trip ticket from Los Angeles . . . to Tehran . . . from a travel agency named Setareh Elahiyeh in Tehran" while living in Oceanside, California. (*Id.*) Plaintiff further attests that while she "had reserved a departure flight from [Los Angeles] to Iran on April 4, 2017, [she] did not depart to Iran until July 4, 2017, which [she] reserved on June 6, 2017 from . . . Setareh Elahiyeh" while living in Oceanside. (*Id.*) Plaintiff provides an electronic ticket/itinerary for the December 6, 2016 air travel from Los Angeles to Tehran (ECF No. 6-1, at 3-4 (the "12/06/2016 Ticket")) as well as the July 4, 2017 air travel from Los Angeles to Tehran (ECF No. 6-1, at 9-10 (the "07/04/2017 Ticket")), but fails to provide any documentation for the January 1, 2017 flight that is the subject of this action. (*See* ECF No. 6, at 2.)

In support of its arguments, Defendant submits two "Passenger Name Records" associated with Plaintiff bearing booking reference numbers 7XMTZU (ECF No. 8-1, at 5 (the "7XMTZU PNR")) and 6VVPYP (ECF No. 4-4, at 25 (the "6VVPYP PNR"), respectively.[10] (*See also* ECF No. 4-3 (supporting affidavit of

---

[10] "[W]here there is no individual passenger ticket for a court to examine at all[,] attention to an 'other instrument' in determining the jurisdiction of this court for Warsaw Convention purposes is appropriate. In fact, it is quite necessary." *Coyle v. P.T. Garuda Indonesia,* 363 F.3d 979, 987 n.8 (9th Cir. 2004).

Odete M. Costeira); ECF No. 8-1, at 1-3 (supplemental supporting affidavit)). The 7XMTZU PNR reflects roundtrip travel departing from Tehran to Los Angeles on September 4, 2016 and returning to Tehran on December 6, 2016. (ECF No. 8-1 at 2-3, 5.) The 6VVPYP PNR reflects roundtrip travel departing from Tehran to Los Angeles on January 1, 2017 and returning to Tehran on April 4, 2017. (ECF No. 4-3, at 2; ECF No. 4-4, at 25; *see also* ECF No. 8-1, at 3.) Notably, the 12/06/2016 Ticket has the same reference number, ticket number, and "original" ticket number as the 7ZMTZU PNR. (*Compare* ECF No. 6-1 at 3; *with* ECF No. 8-1, at 5.) While the 07/04/2017 Ticket's reference number and original ticket number match those on the 6VVPYP PNR, it has a different flight date (4/4/2017 versus 7/4/2017) and a ticket number that does not appear on the 6VVPYP PNR. (*Compare* ECF No. 6-1, at 9; *with* ECF No. 4-4, at 25.) A Customer Relations Officer for Defendant attests that the 6VVPYP PNR indicates that Plaintiff "travelled on the outbound leg of her roundtrip ticket" from Tehran to Los Angeles on January 1, 2017 but did not travel "on the original dates for [her] return flight from Los Angeles to Tehran" on April 4, 2017. (ECF No. 8-1, at 3 (citing ECF No. 4-4, at 25).) They further attest that all relevant tickets were "purchased in Iranian Rial and . . . issued by Setareh Elahiyeh in Tehran." (*Id.* at 2-3; *see also* ECF No. 4-3, at 3 ("As Setareh Elahiyeh is an IATA-accredited agency, it is permitted to sell certain tickets for travel on behalf of IATA member airlines, including [Defendant].").)

Upon due consideration of the foregoing, the Court concludes that the January 1, 2017 flight that is the subject of this action was part of the outbound leg of roundtrip travel from/to Tehran. While Plaintiff attests that her understanding was to the contrary, all of the objective evidence she presents to the Court is consistent with roundtrip airfare from/to Tehran. Indeed, a comparison of the tickets submitted by Plaintiff with the PNRs submitted by Defendant conclusively demonstrate that the January 1, 2017 flight was part of roundtrip air travel

departing from Tehran on January 1, 2017 and returning to Tehran on April 4, 2017 (which Plaintiff subsequently rescheduled to return on July 4, 2017). Because Tehran was therefore both "the "place of departure and place of destination" of the roundtrip air travel upon which Plaintiff was injured and Iran is not a party to the Montreal Convention, the Court concludes that the Warsaw Convention (as amended by the Hague Protocol) governs this action and the Montreal Convention is inapposite. Further, because Tehran was "the place of destination" – and Los Angeles simply an "agreed stopping place" – for the relevant air travel, Plaintiff may not rely upon "the place of destination" category of Article 28 of the Warsaw Convention in bringing suit in this Court. *See* Warsaw Convention, art. 28(1); *Coyle*, 363 F.3d at 991.

Thus, the only remaining basis upon which this Court would be a suitable forum, and therefore have jurisdiction over this action, is if Plaintiff can demonstrate the "where the carrier . . . has an establishment by which the contract has been made" category of Article 28 of the Warsaw Convention is satisfied in this forum. Plaintiff fails to make such a showing. As an initial matter, while Plaintiff argues that she "purchased her ticket from her home in Oceanside" (ECF No. 5, at 5), she attests only that she "was living in Oceanside at the time that [she] booked" the relevant flights (ECF No.6, at 2). Nevertheless, even giving Plaintiff the most generous reading of such equivocal testimony, she ignores that the relevant standard is not where she "purchased" or "booked" her air travel (or even where the relevant ticket was issued), but rather "where the carrier . . . has an establishment by which the contract has been made." Warsaw Convention, art. 28(1). Given Plaintiff's attestation that she booked her air travel through a travel agency located in Tehran and Defendant's attestation that such travel agency had the authority to sell tickets on Defendant's behalf, the Court concludes that Tehran is where Defendant "ha[d] an establishment by which the contract [with Plaintiff] was made" for purposes of the Warsaw Convention. *See id.* Moreover, because

Plaintiff fails to identify any "establishment" maintained by Defendant or the relevant travel agency that is located within the United States – let alone an establishment "by which the contract [was] made" that is located within the jurisdiction of this Court, this case is distinguishable from the only case Plaintiff cites in support of her argument, *Polanski*. *See Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 814 (2d Cir. 1966) ("The central purpose of Article 28(1)'s third provision was to make venue always proper in the country where the ticket was purchased—assuming it is a High Contracting Party— if, but only if, the defendant has a place of business there."); *Polanski*, 378 F. Supp. 2d at 1229-31 ("Although KLM is domiciled and maintains its principal place of business in The Netherlands, it was registered as a foreign corporation in the State of Tennessee at the time of Andre Polanski's injury. Furthermore, as an alliance partner with Northwest, KLM essentially has a place of business in the United States through which it can make contracts. Also, KLM admits that Northwest issues KLM tickets to United States residents, and refers to Northwest as KLM's 'airline partner.' Therefore, anywhere Northwest does business is a place of business in the United States through which KLM can make contracts." (citations omitted)); *see also Kokkonen*, 511 U.S. at 377 ("[T]he burden of establishing [the existence of subject matter jurisdiction] rests upon the party asserting jurisdiction."). Plaintiff fails to demonstrate any other basis for subject matter jurisdiction.

Because Plaintiff fails to demonstrate that this Court has subject matter jurisdiction over the instant action, Defendant's motion to dismiss for lack of jurisdiction (ECF No. 4) is **GRANTED** and this action is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

**IT IS SO ORDERED.**

Dated: April 3, 2020

_____
Honorable Barry Ted. Moskowitz
United States District Judge